UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **John Michael Ragsdale,** | **Civil No. 05-1596 (MJD/JJG)** |
| Petitioner, | |
| v. | **AMENDED** |
| | **REPORT** |
| **J.F. Caraway,** | **AND** |
| | **RECOMMENDATION** |
| Respondent. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on John Ragsdale's petition for a writ of habeas corpus under 28 U.S.C. §2241 (Doc. No. 1). Mr. Ragsdale (Ragsdale) asserts that the Bureau of Prisons (BOP) has not properly considered his request for placement in a halfway house and that it failed to properly calculate his credit for good time served. In addition to opposing Ragsdale's petition on substantive grounds, the BOP argues that Ragsdale failed to exhaust administrative remedies and that the question of halfway house placement is not cognizable under §2241. The dispute is now before this Court for a Report and Recommendation in accordance with 28 U.S.C. §636 and Local Rule 72.1(c).

Through a motion for summary judgment (Doc. No. 13), Ragsdale advances a question of law identical to one in his petition. Because a decision on the merits of the petition will necessarily resolve the question raised in his motion, this Court will recommend that the motion be denied as moot.

**I.     BACKGROUND**

Following his conviction of mail fraud under 18 U.S.C. §1341, Ragsdale was sentenced to five

years' imprisonment in September 2002. During his imprisonment, Ragsdale purportedly raised two issues regarding the execution of his sentence with prison officials. At meetings on April 13 and July 3, 2005, prison officials informed Ragsdale that he would not be eligible for placement in a halfway house until the last ten percent of his sentence. Ragsdale also claims that, by a written complaint to prison officials on July 3, 2005, he challenged prison officials' calculation of his good time credit. Ragsdale concedes that, even though he had the opportunity to appeal both the halfway house and good time issues before prison officials, he did not do so.

## II.   DISCUSSION

### A.   Exhaustion of Remedies

The BOP initially argues that, because Ragsdale did not exhaust administrative remedies, he cannot proceed with his petition. A prisoner ordinarily cannot proceed with a petition for writ of habeas corpus without first exhausting all of the prison's grievance procedures. *Mason v. Ciccone*, 531 F.2d 867, 869 (8th Cir. 1976). Exhaustion is not required, however, when the pursuit of administrative remedies would be futile. *Elwood v. Jeter*, 386 F.3d 842, 844 n. 1 (8th Cir. 2004). Futility includes circumstances where the resolution of a complaint is categorically controlled by a policy or regulation. *Fagiolo v. Smith*, 326 F.Supp.2d 589, 590 (M.D.Pa. 2004).

Here the parties do not dispute that regulations categorically control placement in a halfway house and calculation of good time. Exhaustion is futile under these circumstances. *See, e.g., United States v. Paige*, 369 F.Supp.2d 1257, 1259 (D.Mont. 2005); *Vargas-Crispin v. Zenk*, 376 F.Supp.2d 301, 303 (E.D.N.Y. 2005). Thus Ragsdale was not required to exhaust administrative remedies prior to advancing his petition here.

**B.     Scope of §2241**

The BOP also contends that the issue of placement in a halfway house may not be raised in a §2241 petition. The BOP further suggests that, absent a constitutional violation, his claim cannot proceed under §2241.

Some authorities have stated that, when a petition for writ of habeas corpus is brought under §2241, it must be limited to questions involving the fact of detention or the duration of sentence. *See Knish v. Stine*, 347 F.Supp.2d 682, 686 (D.Minn. 2004). Others have taken the broader view that it may be used for any question relating to the execution of a sentence, including the location of confinement. *See, e.g., Cohn v. Bureau of Prisons*, 302 F.Supp.2d 267, 270 (S.D.N.Y. 2004); *Combs v. Attorney General*, 260 F.Supp.2d 53, 55-56 (D.D.C. 2003).

In *Richmond v. Scibana*, the Seventh Circuit concluded that the issue of placement in a halfway house is not cognizable under §2241 and that this issue should be brought under judicial review provisions of the Administrative Procedure Act (APA). 387 F.3d 602, 605-06 (7th Cir. 2004). No other circuit courts have reached this precise issue, but district courts in other circuits have rejected this view. *See United States v. Paige*, 369 F.Supp.2d 1257, 1259 (D.Mont. 2005); *Pimentel v. Gonzales*, 367 F.Supp.2d 365, 370 (E.D.N.Y. 2005); *Monahan v. Winn*, 276 F.Supp.2d 196 (D.Mass. 2003). Common practice indicates that the issue of placement in a halfway house is frequently heard under §2241. *See, e.g., Colton v. Ashcroft*, 299 F.Supp.2d 681, 686 (E.D.Ky. 2004); *Hurt v. Bureau of Prisons*, 323 F.Supp.2d 1358, 1362 (M.D.Ga. 2003).

This question was recently posed to the District of Minnesota in *Knish v. Stine*. 347 F.Supp.2d 682 (D.Minn. 2004). It observed that, when an issue regarding placement in a halfway house was raised

under §2241, on appeal the Eighth Circuit entertained the issue without questioning its authority to decide the matter. *Id.* at 686 (citing *Elwood v. Jeter*, 386 F.2d 842, 844 (8th Cir. 2004)). Based on this determination, the *Knish* court concluded that "jurisdiction is presumed, and this court is now obligated to exercise jurisdiction[.]" *Id.* This Court is persuaded that this reasoning has equal force here.

Extensive research has failed to disclose any federal authorities that limit claims under §2241 to constitutional violations. To the contrary, federal courts have frequently considered claims under §2241 that involve the violation of statutes, including those relating to the placement of prisoners. *See, e.g., Paige*, 369 F.Supp.2d at 1259; *Cohn*, 302 F.Supp.2d at 270; *Combs*, 260 F.Supp.2d at 55-56. Thus, Ragsdale is not required to establish a constitutional violation to proceed with his claim under §2241.

### C. Scope of Discretion in Prisoner Placements

Ragsdale asserts that when he applied for placement in a halfway house, prison officials categorically denied his request under 28 C.F.R. §570.21. He then argues in relevant part that this regulation violates 18 U.S.C. §3621(b), which requires that prison officials exercise discretion when determining an appropriate facility for the placement of prisoners. Before proceeding to this issue, it is useful to review the history leading to the promulgation of 28 C.F.R. §570.21.

Longstanding practice at the BOP had permitted certain nonviolent offenders to serve most or all of a sentence at a halfway house, particularly at the recommendation of the sentencing judge. Promulgation of 28 C.F.R. §570, 70 Fed.Reg. 1659, 1659 (Jan. 10, 2005); *Colton v. Ashcroft*, 299 F.Supp.2d 681, 684 (E.D.Ky. 2004). The Department of Justice Office of Legal Counsel (OLC) issued an opinion in December 2002 that rejected this practice. 70 Fed.Reg. at 1659.

The December 2002 opinion was based on the OLC's interpretation of two statutes. One of these

statutes, 18 U.S.C. §3621(b), sets out the general authority of the BOP to direct the placement of its prisoners:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable, considering
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence—
>
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
>     (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission . . . .
>
> . . . . The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. . . .

The other statute, 18 U.S.C. §3624(c), supplies criteria for the placement of prisoners in a halfway house:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner . . . spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. . . .

In its December 2002 opinion, the OLC reasoned in relevant part that a halfway house was not a "place of imprisonment" under §3621(b). It then concluded that §3624(c) was the sole basis by which

a prisoner may be placed in a halfway house. The BOP implemented this opinion by refusing to consider any halfway house placements prior to the last ten percent, not to exceed six months, of a sentence. 70 Fed.Reg. at 1659. But several courts rejected the implementation of the December 2002 opinion, with their decisions following two separate rationales.

Some courts held that a halfway house is a "penal or correctional facility" constituting a "place of imprisonment" under §3621(b), and therefore, the BOP has discretion to consider placement of a prisoner at a halfway house. Although §3624(c) requires the BOP to supply transitional placements for prisoners at the end of a sentence, it does not otherwise constrain the discretion of the BOP to consider halfway house placements at an earlier time. *See, e.g., Elwood v. Jeter*, 386 F.3d 842, 845 (8th Cir. 2004); *Goldings v. Winn*, 383 F.3d 17, 21-22 (1st Cir. 2004).

Other courts examined the implementation of the December 2002 opinion under the APA. Because the opinion had the effect of a substantive rule, it was improper for the BOP to adopt it without following notice and comment rulemaking procedures.[1] *See, e.g., Colton v. Ashcroft*, 299 F.Supp.2d 681, 692-93 (E.D.Ky. 2004); *Monahan v. Winn*, 276 F.Supp.2d 196, 210-11 (D.Mass. 2003); *Ferguson v. Ashcroft*, 248 F.Supp.2d 547, 565 (M.D.La. 2003).

Responding to this scrutiny, the BOP followed APA notice and comment rulemaking procedures and promulgated 28 C.F.R. §570.21. The new rule provided:

---

[1] This rationale is potentially inconsistent with this Court's previous conclusion that, for issues relating to placement in a halfway house, a prisoner may proceed under §2241 instead of under the APA. Nevertheless, several courts have considered issues arising under the APA in the context of a petition under §2241. *See, e.g., Colton*, 299 F.Supp.2d at 686-87, 692-93; *Benton v. Ashcroft*, 273 F.Supp.2d 1139, 1143, 1147 (S.D. Cal. 2003); *Monahan*, 276 F.Supp.2d at 201, 210-11.

    (a)    The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

    (b)    We may exceed these timeframes only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program . . .).

In its comments accompanying the promulgation of this regulation, the BOP recognized its discretion to allow placement at a halfway house prior to the period in §3624(c). It stated that, pursuant to this discretion, the BOP had opted to categorically deny any placement in a halfway house prior to this period. 70 Fed.Reg. at 1660.

The BOP added that its exercise of discretion was based on due consideration of all the §3621(b) factors. 70 Fed.Reg. at 1660. But its comments expressly refer to only one factor, "the resources of the facility contemplated." *See* 18 U.S.C. §3621(b)(1). On this topic the BOP opined,

> Based on its experience, the Bureau has concluded that the resources of [halfway houses] make them particularly well suited as placement options for the final portion of offenders' prison terms. This rule is based in part on a closer look at the particular characteristics and advantages of [halfway houses] that make them best suited to particular inmates during the last ten percent of the prison sentence being served, not to exceed six months.

70 Fed. Reg. at 1660.

The issue here is whether the new rule violates the statute. Ragsdale argues that, because §570.21 categorically rejects early placement at a halfway house, the BOP did not exercise the discretion committed to it under §3621(b). The BOP counters that such a categorical rule is within the scope of its discretion.

A similar question was posed to the U.S. Supreme Court in *Lopez v. Davis.* 531 U.S. 230 (2001). This case involved 18 U.S.C. §3621(e), which gives the BOP discretionary authority to reduce the sentences of certain prisoners who successfully complete substance abuse treatment. The BOP promulgated a rule that barred sentence reductions for prisoners who had committed a felony involving a firearm. *Id.* at 233-34.

The Court began its analysis by observing that the BOP, under its reasonable interpretation of the statute, had discretion to reduce prisoners' sentences. *Id.* at 241. It then asked whether the rule, as an exercise of this discretion, was "reasonable in light of the legislature's revealed design." *Id.* (quoting *Nationsbank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)).

Because §3621(e) did not supply factors controlling the BOP's discretion, the Court determined that the BOP had broad discretion to develop appropriate factors of its own. *Id.* at 242-43 (citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 31 (1996) (concluding that, because the Attorney General had unfettered discretion to grant deportation waivers, the Attorney General could properly consider an alien's prior history of entry fraud)). It also rejected the notion that a categorical rule necessarily signaled a failure of discretion that would make "a nullity of the statute." *Id.* at 243 n. 4.

The Court stated that, in the absence of congressional intent to the contrary, an agency has authority to use rulemaking to resolve "issues of general applicability," *id.* at 243, and cannot be required to "revisit issues that may be established fairly and efficiently in a single rulemaking proceeding," *id.* at 243-44 (quoting *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)) (internal quotation marks omitted). Because use of a firearm suggests a greater likelihood of violence after release, the Court held that the categorical rule was a permissible exercise of discretion. *Id.* at 244.

Relying principally on *Lopez*, four published decisions have reached whether the categorical rule stated in §570.21 violates the discretion committed to the BOP under §3621(b). Two district courts upheld the new rule: *Moss v. Apker*, 376 F.Supp.2d 416 (S.D.N.Y. 2005) and *Yip v. Bureau of Prisons*, 363 F.Supp.2d 548 (E.D.N.Y. 2005). Two others rejected the new rule: *United States v. Paige*, 369 F.Supp.2d 1257 (D.Mont. 2005) and *Pimentel v. Gonzales*, 367 F.Supp.2d 365 (E.D.N.Y. 2005).[2]

Of the courts that upheld the new rule, the *Moss* court offers the most engaging analysis. It began by determining that §3621(b) supplied broad discretion to the BOP. Reviewing the statements of the BOP during the rulemaking process, the *Moss* court credited the BOP's representation that the rule was based on due consideration of all of the §3621(b) factors. The court added that, even though the BOP did not expressly mention each factor, the BOP was not required to accord each factor equal weight. Thus a categorical rule, based on the availability of halfway house facilities, was a permissible exercise of discretion. *Moss*, 376 F.Supp.2d at 423-24. In a more summary analysis, the *Yip* court reached a consistent result. *Yip*, 363 F.Supp.2d at 552.

---

[2] When the administration of a statute is committed to an executive agency, statutory interpretation by that agency is ordinarily entitled to some deference. The U.S. Supreme Court, in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, supplied a two part test for determining the appropriate level of deference. 467 U.S. 837, 842-43 (1984). Although the question here arguably involves statutory interpretation by the BOP, when the majority opinion in *Lopez* considered the discretion accorded to the BOP under §3621(e), it did not undertake a *Chevron* analysis. *Lopez*, 531 U.S. at 242-43. And this analysis is absent from the published decisions, cited here, that have considered the discretion of the BOP under §3621(b). *See Paige*, 369 F.Supp.2d at 1261-62; *Moss*, 376 F.Supp.2d at 424-25; *Pimentel*, 367 F.Supp.2d at 374; *Yip*, 363 F.Supp.2d at 552. Thus this Court does not undertake a *Chevron* analysis. But in a dissenting opinion in *Lopez*, Justice Stevens, joined by two other justices, argued that a *Chevron* analysis was required to evaluate the level of discretion accorded to the BOP under §3621(e). *Lopez*, 531 U.S. at 245, 247.

Rejecting the new rule, both *Paige* and *Pimentel* cited the legislative history of §3621(b) and observed that the statute specifically required the BOP to consider several factors when placing prisoners. Both reviewed the comments of the BOP from the rulemaking process and, contrary to *Moss*, determined that the BOP did not duly consider each of the §3621(b) factors. *Paige*, 369 F.Supp.2d at 1262; *Pimentel*, 367 F.Supp.2d at 373-74. The *Pimentel* court also recognized that *Lopez* allows categorical rules under some circumstances. In order to distinguish *Lopez*, it noted that §570.21 applied to all prisoners and did not identify a factor, such as use of a firearm, that would justify a categorical denial of any early halfway house placements. *Pimentel*, 367 F.Supp.2d at 375.

Thus the courts in *Paige* and *Pimentel* identify two areas that distinguish §570.21 from the regulation upheld in *Lopez*. First, the statute in *Lopez* does not supply any discrete factors that control the discretion of the BOP. Because the BOP is constrained here by five discrete factors under §3621(b), its discretion is necessarily more limited. Second, the regulation in *Lopez* was based on a factor, use of a firearm, where fairness and efficiency justified a categorical rule. But here §570.21 does not state any comparable factors. Regardless of prisoners' individual circumstances, all are denied early halfway house placements.

This Court is persuaded that the reasoning of *Paige* and *Pimentel* is consistent with a careful reading of *Lopez*. When the BOP promulgated §570.21, it did not review each of the §3621(b) factors, or determine whether these factors supported the implementation of a categorical rule. *See* 70 Fed.Reg. at 1660-61. Because §570.21 does not fairly resolve whether a prisoner should be considered for placement in a halfway house, the rule exceeds the discretion vested in the BOP under the statute. This Court concludes, therefore, that §570.21 violates §3621(b) and is invalid.

A determination that §570.21 is ineffective, however, does not entitle Ragsdale to placement in a halfway house. *Paige*, 369 F.Supp.2d at 1262. The remedy under these circumstances is for the BOP to reconsider his request for such a placement, giving due consideration to the §3621(b) factors and disregarding the invalid rule. *Pimentel*, 367 F.Supp.2d at 375-76; *see also Knish*, 347 F.Supp.2d 682, 687 (D.Minn. 2004) (holding that, where BOP policy unlawfully barred request for placement in a halfway house, prison was entitled to reconsideration under factors existing prior to implementation of policy).

### D.     Calculation of Good Time

Ragsdale claims that 28 C.F.R. §523.20 violates 18 U.S.C. §3624(b) because good time is calculated from the duration of time served rather than the original sentence imposed. Under current BOP regulations, at the end of each year of time served, a prisoner receives good time and the duration of the prisoner's sentence is reduced. 28 C.F.R. §523.20. Thus a prisoner cannot earn good time for the entire duration of the original sentence imposed.

The statute provides in relevant part:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations[.]

To support his claim that good time be calculated from the original sentence imposed, Ragsdale advances two arguments.

First, he contends that the phrase "term of imprisonment" refers to the duration of the sentence

11

imposed. Thus he seeks a maximum of fifty-four days' good time for each year imposed, or a total of 270 days' good time for his five year sentence. Second, he asserts that the phrase "at the end of each year" means that good time should be awarded within each year, rather than after the end of each year, of time served. This method ensures that a prisoner receives fifty-four days good time for each year of the sentence imposed.

When the administration of a statute is committed to an agency, the agency is ordinarily entitled to some deference in its interpretation of the statute. The appropriate level of deference is determined in accordance with the test set out by the U.S. Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837 (1984). Under this test, the initial inquiry is whether the statute unambiguously expresses congressional intent. If the statute is unambiguous, the agency is not entitled to deference and it must follow the plain meaning of the statute. If the statute is ambiguous, the agency is entitled to deference so long as its interpretation is reasonable and not arbitrary, capricious, or manifestly contrary to the statute. *Id.* at 843-44. The majority of federal courts have applied the *Chevron* analysis to determine whether the BOP's interpretation of §3624(b) is entitled to deference. *See, e.g., O'Donald v. Johns*, 402 F.3d 172, 174 (3d Cir. 2005); *Perez-Olivo v. Chavez*, 394 F.3d 45, 49 (1st Cir. 2005).

When examining whether the phrase "term of imprisonment" is ambiguous, it is presumed that when a phrase appears more than once in a statute, Congress intended the same meaning for that phrase. *Williams v. DeWalt*, 351 F.Supp.2d 412, 416 (D.Md. 2004). This presumption is strengthened when a phrase appears more than once in the same sentence. *Brown v. Gardner*, 513 U.S. 115, 118 (1994). Furthermore, by employing the phrases "term of imprisonment" and "time served" in the same statute, it

may be presumed that Congress intended different meanings for each phrase. *See Moreland v. Bureau of Prisons*, 363 F.Supp.2d 882, 886 (S.D. Tex. 2005). But these presumptions may be overcome when a close reading of the statute indicates inconsistent usage of identical phrases. *See Yi v. Bureau of Prisons*, 412 F.3d 526, 532-33 (4th Cir. 2005).

The phrase "term of imprisonment" appears throughout 18 U.S.C. §3624. Paragraph (a) provides that "[a] prisoner shall be released . . . on the date of expiration of the prisoner's term of imprisonment, less [good time.]" In this context, the phrase "term of imprisonment" refers to the sentence imposed. By contrast paragraph (c) provides,

> The Bureau of Prisons shall . . . assure that a prisoner serving a term of imprisonment spends a reasonable part . . . of the *last ten per centum* of the term . . . under conditions that will afford the prisoner to . . . prepare for the prisoner's re-entry into the community[,]

and paragraph (d) adds,

> *Upon the release of a prisoner on the expiration* of the prisoner's term of imprisonment, the Bureau of Prisons shall furnish the prisoner with [clothing, transportation, and other sundries].

(Emphasis added.) In these instances, the phrase "term of imprisonment" necessarily refers to time served. If the phrase referred to the sentence imposed, the statute would produce an absurd result, withholding release services after a prisoner was released from custody. *See generally O'Donald*, 402 F.3d at 174; *White v. Scibana*, 390 F.3d 997, 1001 (7th Cir. 2004), *cert. denied sub nom. White v. Hobart*, 125 S.Ct. 2921 (2005).

Because the phrase "term of imprisonment" is inconsistently used, there is no clear expression of congressional intent. Thus under the *Chevron* analysis, the inquiry shifts to whether the BOP's

13

interpretation is reasonable. By interpreting "term of imprisonment" under §3624(b) to mean "time served," the BOP determines good time in a manner that is consistent with the statute and not arbitrary and capricious. Such an interpretation of this term by the BOP is reasonable and entitled to deference. *O'Donald*, 402 F.3d at 174.

For the phrase "at the end of each year," the parties dispute whether "the end" is after the end of, or contemporaneous with, each year of time served. At least one federal court has suggested that the use of "at" necessarily means the latter. *Moreland*, 363 F.Supp.2d at 886-87. Assuming for the sake of argument that this phrase is ambiguous, §3624(b) further provides that good time is available "if the Bureau determines that, during that year, the prisoner has . . . satisfactorily complied with . . . institutional regulations." This language supports a plain determination that, prior to receiving good time, a prisoner must establish a full year of good behavior. *See Yi*, 412 F.3d at 534; *Sash v. Zenk*, 344 F.Supp.2d 376, 380 (E.D.N.Y. 2004). Again the BOP determines good time in a manner consistent with the statute, and therefore, the BOP is entitled to deference under the *Chevron* analysis. *Yi*, 412 F.3d at 534.

This result comports with the majority of federal courts that have reached the issue. *See, e.g., Yi*, 412 F.3d at 534; *O'Donald*, 402 F.3d at 174; *Perez-Olivo*, 394 F.3d at 52-53; *White*, 390 F.3d at 1002-03; *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1270-71 (9th Cir. 2001). *But see Moreland*, 363 F.Supp.2d at 891; *Williams*, 351 F.Supp.2d at 419. The Eighth Circuit has also followed the majority rule. *See James v. Outlaw*, 126 Fed.Appx. 758, 758 (8th Cir. 2005). Because the BOP is entitled to deference in its interpretation of §3624(b), and because §523.20 provides a reasonable method for calculation of good time in accordance with the statute, Ragsdale is not entitled to relief here.

### III.    CONCLUSION

For the reasons discussed above, this Court concludes that when the BOP applied 28 C.F.R. §570.21 and denied Ragsdale admission to a halfway house, the BOP failed to exercise the discretion committed to it under 28 U.S.C. §3621(b). This Court recommends, therefore, that Ragsdale's petition for a writ of habeas corpus be granted and that the BOP consider his request for placement in a halfway house in accordance with the factors in §3621(b).

## IV. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Ragsdale's petition for a writ of habeas corpus under 28 U.S.C. §2241 (Doc. No. 1) be **GRANTED.**

2. Consistent with the analysis in this Report and Recommendation, the BOP shall consider Ragsdale's request for placement in a halfway house by applying the factors in 18 U.S.C. §3621(b) and without referring to 28 C.F.R. §570.21.

3. Ragsdale's motion for summary judgment (Doc. No. 13) be **DENIED AS MOOT.**

Dated: November 15, 2005             s/Jeanne J. Graham

JEANNE J. GRAHAM
United States Magistrate Judge

Under Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by December 5, 2005, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A District Court Judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not

constitute an order or judgment of the District Court, and it is not appealable directly to the Court of Appeals.